IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW J. SHERVEN,

                    Plaintiff,

v.                                                                                        OPINION and ORDER

CENTRAL INTELLIGENCE AGENCY,                                      22-cv-701-jdp

                    Defendant.

---

Plaintiff Matthew J. Sherven, proceeding without counsel, is suing the Central Intelligence Agency for failing to produce requested documents, in violation of the Freedom of Information Act. The CIA moves for summary judgment, and Sherven moves for an in camera inspection of documents. I will grant the CIA's motion for summary judgment and deny Sherven's motion for an in camera inspection.

The only disputed issue is whether the CIA was entitled to refuse on national security grounds to conduct a search for some of Sherven's requested documents, including those related to surveillance activities and presidential conversations. The CIA has satisfied the deferential standard for obtaining an exemption by providing plausible reasons why confirming or denying the existence of the requested documents could harm national security. In this context, requiring the CIA to conduct a search so that the court can conduct an in camera inspection would be inconsistent with the applicable exemption.

BACKGROUND

This lawsuit appears to encompass six information requests that Sherven submitted to the CIA in Octobert and November 2022. Sherven's complaint only refers to four requests; the government identified seven requests from Sherven to the CIA during the relevant time period, and it has discussed all of those requests in its summary judgment motion.[1] But Sherven stated in a letter to the CIA that one of the requests "has nothing to do with my lawsuit," Dkt. 23, ¶ 13, so I will not consider that request. The government refers to each of the other requests by a number from one to six, and I will take the same approach.

Request 1 was for "all documents containing [Sherven's] address or [his] geographic coordinates." Dkt. 24-2, at 2. The CIA identified 31 responsive documents, released 30 of them in full and released one with redactions. As for the redactions, the CIA claimed exemptions based on national security and on 5 U.S.C. § 552(b)(1) and (3).

Request 2 was for "[a]ll documents containing information on [Sherven's] thoughts, emotions, or stress levels. All documents containing [his] address or geographic coordinates. All documents and audio recordings containing the phrase 'linenkugel brain.'" Dkt. 24-2, at 3. The CIA told Sherven that there were no documents responsive to this request other than those already produced in response to Request 1.

Request 3 was for "all copies of the CIA's signals intelligence training materials and any materials for training CIA personnel on the use of software to control signals intelligence satellites or on the operation of signals intelligence satellites." Dkt. 24-2, at 4. The CIA told

---

[1] One of these requests invokes the Privacy Act, 5 U.S.C. § 552a. Dkt. 24-2, at 3. But Sherven did not assert a claim under the Privacy Act in his complaint, and neither side discusses a potential Privacy Act claim in their briefs, so I will not consider such a claim.

2

Sherven that it could not confirm or deny the existence of such documents because they would "relate[] to CIA intelligence sources and methods information" and are exempted under the CIA Act of 1949 and the National Security Act of 1947, Dkt. 24-3, at 2.

Request 4 was for "all documents in which the President of the United States approved of or authorized the use of United States spy satellites on American citizens within the United States[;]. . . all documents in which the [P]resident authorized targeted signals intelligence gathering on any American citizen within the United States . . . from January 1st, 1990 onwards." Dkt. 24-2, at 5. The CIA's response to this request was the same as Request 3.

Request 5 was for "all recordings of phone conversations that President Joe Biden had with Ukrainian President Zelenskyy in June 2022." Dkt. 24-2, at 6. The CIA's response to this request was the same as Request 3 and Request 4.

Request 6 was for "a list of all Nicaraguan rebel groups being funded by the CIA." Dkt. 24-2, at 7. The CIA's response to this was the same as Requests 3 through 5.

ANALYSIS

FOIA requires federal agencies to make agency records available to any person who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules," unless the records fall within one of nine statutory exemptions. 5 U.S.C. § 552(a)(3)(A), (b)–(c); *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015). If the agency improperly withholds a document, the requester may sue the agency in federal court to compel production. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980).

In this case, the CIA disclosed some documents, redacted one document, and refused to search for some documents on national security grounds. Sherven does not challenge the adequacy of the CIA's search, and he does not appear to challenge the CIA's response to his first two requests about documents including information about him. Rather, Sherven appears to be challenging the CIA's refusal to search for documents in response to Requests 3 through 6 relating to the following issues:

- signals intelligence
- "spy satellites"
- conversations between the American and Ukrainian presidents in October 2022
- Nicaraguan rebel groups being funded by the CIA.

In refusing to search for responsive records on these topics, the CIA relied on two exemptions: (1) § 552(b)(1), which applies to "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order"; and (2) § 552(b)(3), which applies to "matters that are . . . specifically exempted from disclosure by statute." Courts refer to this sort of refusal as "a *Glomar* response," meaning that the agency asserts that it will not search for records because confirming or denying the existence of responsive records would itself threaten interests protected by FOIA exemptions. *White v. United States Department of Justice*, 16 F.4th 539, 541–42 (7th Cir. 2021) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

The Court of Appeals for the Seventh Circuit has permitted these types of responses. In *White,* the court stated that "[a] *Glomar* response is proper if, for instance, confirming or denying that records exist would reveal whether someone is an informant or otherwise intrude

4

unduly on privacy." 16 F.4th at 542. And in *Bassiouni v. CIA,* the court stated that "FOIA permits the CIA to make a '*Glomar* response' when it fears that inferences from *Vaughn* indexes or selective disclosure could reveal classified sources or methods of obtaining foreign intelligence." 392 F.3d 244, 246 (7th Cir. 2004). The court of appeals has not set forth a more general test for evaluating a *Glomar* response, but in *Wolf*, which the Seventh Circuit cited with approval in *White*, the D.C. Circuit stated that the question is simply whether "the fact of the existence or nonexistence of agency records falls within a FOIA exemption." 473 F.3d at 374. That is the standard the CIA proposes, and Sherven does not disagree, so that is the standard I will apply.

To support its argument that § 552(b)(1) justified the refusal to search for records, the CIA points to Executive Order 13526, which authorizes classifying information when the following conditions are met:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

The CIA submitted the declaration of Mary Williams, its litigation and information and review officer, who states that she is an original classification authority. Dkt. 24, ¶ 22. She says that the information requested by Sherven in Requests 3 through 6 falls within § 1.4(c) of the executive order, which applies to "intelligence activities (including covert action), intelligence

5

sources or methods, or cryptology," and § 1.4(d), which applies to "foreign relations or foreign activities of the United States, including confidential sources." *Id.*, ¶ 32. And she says that confirming or denying the existence of responsive records would harm national security by "disclosing intelligence activities, sources, and methods." *Id.* ¶ 34. Williams explains:

> Disclosing the existence of responsive documents during the referenced time periods would tend to reveal the CIA's intelligence priorities or areas of focus concerning certain locations and people. Conversely, disclosing the nonexistence of these records might reveal intelligence gaps or areas of lessened scrutiny, which also reveals information regarding intelligence sources and methods.
>
> . . . . Notwithstanding the age of the requested records, terrorist organizations, foreign intelligence services, and other hostile groups continually gather details regarding the CIA's specific intelligence capabilities, authorities, and interests and attempt to use this information to their advantage. In order to effectively collect and analyze foreign intelligence and counterintelligence, the Agency must avoid disclosing the subjects of its collection and the manner in which the Agency pursues its targets. Confirming or denying the existence of responsive documents concerning people, locations, or organizations at issue in FOIA Requests 3-6, and, as a consequence, highlighting the methods by which Agency officers engage in intelligence gathering as well as other sources and methods, could reasonably be expected.

*Id.*[2]

Courts must defer to agencies on issues of national security, taking into account that "any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent." *American Civil Liberties Union v. U.S. Dept. of Defense*, 628 F.3d 612,

---

[2] The CIA relies on the same reasoning to support an exemption under § 552(b)(3), which refers to other statutes that provide exemptions. The CIA cites the National Security Act, 50 U.S.C. § 3024(i)(1) and Executive Order 12333, which allow the CIA to protect "intelligence sources and methods from unauthorized disclosure." But the CIA does not contend that the National Security Act provides a broader exemption than § 552(b)(1), so I need not consider the National Security Act separately.

619 (D.C. Cir. 2011). The court must credit the agency's explanation, so long as it is "logical or plausible," in light of the specificity of the explanation and any contrary evidence submitted by the plaintiff. *Id.*

The CIA could have been more specific in its explanation. But it is at least plausible that disclosing details of the CIA's intelligence activities and private conversations of the President would harm national security. The type of information Sherven seeks is similar to the information that courts have protected from disclosure in the past. *See Schaerr v. United States Department of Justice*, 69 F.4th 924, 926 (D.C. Cir. 2023) (surveillance activities); *Knight First Amendment Institute at Columbia University v. Central Intelligence Agency*, 11 F.4th 810, 819 (D.C. Cir. 2021) (evidence of specific CIA investigations); *ACLU*, 628 F.3d at 619 (interrogation techniques).

Sherven cites no contrary evidence suggesting that the information he is requesting would not harm national security. In fact, Sherven does not respond directly to any of the CIA's arguments. Instead, he makes several other assertions in his briefs: (1) the CIA should have searched for "segregable" portions of classified records; (2) some of the classified records may be about him, and he is entitled to those records; (3) the classified records may show that the CIA is violating the law; and (4) Williams "committed perjury by lying about the classified records being withheld by the CIA." Dkt. 26. Sherven asks the court to order the CIA to search for the records and then conduct an in camera review to determine which records qualify for an exemption.

Sherven does not explain any of his assertions, and I conclude that none of them preclude summary judgment in favor of the CIA. First, Sherven's request for the CIA to produce segregable portions of the classified records is presumably based on § 552(a)(8)(A)(ii)(II),

7

which requires the agency to "take reasonable steps necessary to segregate and release nonexempt information." But this requirement cannot apply when the agency has shown that disclosure of even the existence or absence of documents could harm national security. In that situation, *all* of the documents (or lack thereof) necessarily qualify for the exemption. There is nothing to segregate.

Second, Sherven cites no legal authority for the view that a FOIA exemption does not apply to a document that relates to the requester. Sherven did not assert a claim under the Privacy Act. In any event, he provides no basis for finding that any documents responsive to Requests 3 through 6 would include information about him. Sherven does not dispute that the CIA identified all documents responsive to Requests 1 and 2 relating to him personally.

Third, Sherven cites no authority for the view that FOIA exemptions do not apply when the requester is alleging unlawful conduct by the agency. In fact, the D.C. Circuit has rejected that view. *See ACLU*, 628 F.3d at 622 ("[T]here is no legal support for the conclusion that illegal activities cannot produce classified documents. In fact, history teaches the opposite."). In any event, Sherven has not shown that the conduct at issue in his requests is illegal.

Fourth, Sherven identifies no false statements made by Williams, and he cites no evidence of perjury. So he has not supported that allegation.

As for Sherven's request for the court to conduct an in camera review, this is based on 5 U.S.C. § (a)(4)(viii)(B), which states that "the court . . . may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section." This is another provision that does not apply once the court determines that national security could be harmed even by confirming or denying the existence of the records. Any in camera review

of records would necessarily require the agency to confirm that there are responsive documents. Again, the CIA has given plausible reasons why it will not search for records responsive to Requests 3 through 6, and Sherven has not cited any contrary evidence. So the CIA is entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Matthew J. Sherven's motion for an in camera review, Dkt. 19, is DENIED.

2. The Central Intelligence Agency's motion for summary judgment, Dkt. 21, is GRANTED.

Entered October 25, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge